Judge Owsley
delivered the opinion.
This was an action of trespass brought by Wilson to recover damages against Harrison, for taking, conveying away, and converting to his use, eight tons and fifty pounds of barr iron, the property of Wilson.
Harrison pleaded, 1. Not guilty.
2. That the plaintiff his action ought not to have and maintain, because he says that he is, and was at the day set forth in the declaration, deputy sheriff for Samuel Hennery, sheriff of Jefferson county, and as such, an execution, No. 3718, in the name of John S. Dugon, against William S. Thomas, Charles Anderson, C. P. Sucket, Minor Sturgus and James Hunter, which issued from the clerk’s office of the Jefferson circuit court, and now to the court shewn, was on the — day of —, put into his hands for collection: and the property, to wit: the iron in the declaration set forth, was subject to satisfy said execution, before it came into the possession of the plaintiff, or he acquired a right to the same: and that he, as deputy *548 sheriff of Jefferson, levied the said execution upon the said property, and seized, took and sold the said property to satisfy the same, and that is the same trespass, &c. without th—.
To the second plea, the plaintiff, Wilson, demurred, and the demurrer being joined, judgment was rendered by the court sustaining the demurrer.
Harrison then, without withdrawing his second plea, obtained leave from the court, and filed a third plea, by which he says, the plaintiff his action ought not to have and maintain, because, he says, that upon the — day of —, an execution, No.—, in the name of John S. Dugon, against William S. Thomas, which is proffered to the court, issued from the clerk’s office of the Jefferson circuit court, and came to the hands of the sheriff of said county, and was levied upon the goods of said Thomas, who, upon the — day of —, replevied the same, with Crowan P. Sucket, Charles Anderson, James Hunter, and Minor Sturgus, his securities, and to indemnify them and make them safe, and to refund to them what they, might have to pay, and were liable to pay, the said Thomas executed his certain deed, dated the 9th of October, 1817, and witnessed by the, plaintiff aforesaid, conveying all his goods, and certain other property therein named, to said securities, which deed is to the court shewn, and the iron in the declaration mentioned, was, at the date of said deed, the property, goods and stock in trade of the said Thomas, and was passed, and transferred, and delivered to the said Anderson, Sucket, Hunter and Sturgus, and by them delivered to the plaintiff as their agent, and store keeper, who took upon himself the duties of first clerk in said store, the said iron forming a part of the said goods sold and bona fide delivered as aforesaid, and the defendant avers, that afterwards, on the — day of —, there issued upon the said replevin bond, an execution, No. —, against the said Thomas, Hunter, Sucket, Anderson and Sturgus, which said execution was in full force and undischarged, levied the said execution, which is now to the court shewn, upon the said iron, as the property of the same, or all of the defendants therein named, and sold the same in discharge pf said execution, and that the said property was subject to the said execution, and this he is ready to verify, &c.
To this plea, the plaintiff, Wilson, protesting against the matters and things contained in said plea, replied, that he *549 ought not to be barred from having and maintaining his action for any thing herein contained, because, he says, that the property, to wit, the iron in the plea mentioned, was not the property of said Sucket, &c. but was the property of the plaintiff, and says, the trespass in the declaration mentioned, was of his, the defendant’s own wrong, and without any such cause as the said plea alleges, and this he prays may be inquired of by the county, &c.
In the general it state th't wh't may be given in evidence on the general issue, should be pleaded specially, but where a plea confesses and avoids the pltf's action by matter which a pltf. would not be bound to prove to sustain his action, there a special plea is proper.
To this replication, the defendant joined issue; and to the plea of not guilty, the plaintiff joined issue.
A jury was called to try the issues, and found a verdict for 1744 dollars in damages for the plaintiff. The defendant, then, moved the court to set aside the verdict, and award a new trial, on the grounds, 1st, of the verdict being against law and evidence; and, 2d, on the ground of surprise; but his motion was overruled by the court, and judgment rendered in conformity to the verdict.
From that the defendant appealed to this court, and has assigned for error,
1. The court erred in sustaining the plaintiff’s demurrer to his first plea.
2. The court erred in overruling his motion for a new trial.
This court concurs with the circuit court in its decision upon the invalidity of the plea—not, however, because we suppose the matter contained in the plea is exclusively the subject of defence under the general issue, but because the plea is essentially defective in not containing all necessary averments to a valid plea in bar of the action. The plea implies an admission of the plaintiff having the possession of the iron, under a right previously acquired, at the date of the trespass complained of in the declaration, and attempts to justify the taking of the iron, under an execution which issued against the estate of others, but to which, the plea alledges, the iron was subject
Now if it be true, as the plea seems to admit, that at the time of the defendant’s taking the iron, the plaintiff was possessed thereof, under a previous acquired right, it is perfectly clear, that on the trial of the general issue, the plaintiff could not; in the first instance, be required to introduce any evidence conducing to disprove the iron to be subject to the execution under which the defendant attempts to justify; and hence, were it even admitted, that the defendant might upon the trial of the general issue have availed himself *550 of the matter contained, in the plea, it would not from thence follow, that he could not plead it specially: for although, in many instances, it is irregular to plead specially, matter which might he proven on the general issue, it is well settled, that any ground of defence, which admits the facts alledged in the declaration, but avoids the action by matter which the plaintiff could not be bound to prove or dispute in the first instance, on the general issue, though it might be proven on the general issue by the defendant, may be pleaded specially. But in pleading specially in such a case, all the facts relied on by the defendant should be alledged to enable the court in deciding the law to determine upon the sufficiency of the defence, and no general allegation, involving both law and fact, should be contained in the plea, whereby the decision of the law might be withdrawn from the court to the jury.
A plea avering matter of law as well as fact is bad. It should set out all the facts from whence the law is deducible & leave the law arising thereon to the court.
The plea in question, therefore, is essentially bad, in alledging in general terms, that the iron was subject to the execution, instead of stating the facts, and circumstances by which it became subject, and which would enable the court to decide whether or not, in point of law, it was subject to the execution. For whether the iron was subject to the execution, involves a question of both law and fact, and as the facts are properly triable before jury, and the law before the court, the plea ought regularly to alledge the facts, and the facts only, leaving the question of law, in case the facts should be admitted or found by the jury, to be brought before the court for its determination.
It results, therefore, that the court deccided correctly in sustaining the demurrer to Harrison’s plea, and that the first assignment of error cannot avail him in this court.
The other assignment of error involves an inquiry into the propriety of the courts refusal to award a new trial.
The motion for a new trial, as has been already observed, was made on two grounds, and first, on that of the verdict being against evidence.
Considered abstractly from the evidence introduced by Harrison, there cannot be a doubt, but, the evidence supports the verdict. For Wilson, not only introduced evidence conducing to prove every fact essential to his right to recover, but the evidence is of a character fully justifying the verdict rendered by the jury And with respect to the opposing evidence introduced by Harrison, we have been unable to discover any thing which can justify the *551 setting the verdict. It appears that the iron formerly belonged to a certain William S. Thomas, and whilst he was the proprietor thereof, a fieri facias issued from the clerks office in favor of John S. Dugon, against his estate, and was put into the hands of Harrison, then a deputy sheriff, for collection, and that whilst the sheriff held the execution, and before the return day thereof, Wilson purchased the iron from Thomas, and received it into his possession. But after the purchase and receipt of the iron by Wilson, the execution appears to have been replevyed by Thomas, and Sucket, Anderson, Hunter, and Sturgus, became his securities in the replevin bond. And for the purpose of indemnifying and keeping the securities safe against their liability under the replevin bond; Thomas, at the same time exeeuted to them a mortgage, comprising ‘all his stock of goods and merchandise of every sort, kind and description, which he then had, or in anywise belonging to him in his store, in the town of Louisville. And after the replevin bond became payable, a fieri facias issued thereon against the estate of Thomas and his securities, and in virtue thereof, the iron was taken and sold by Harrison, who still remained deputy sheriff. It moreover appears, that at the time of Wilson’s purchasing the iron, another writ of fieri facias which issued against the estate of Thomas, in favor of another person, was in the hands of the sheriff, but whether the amount thereof has been satisfied, or whether any thing further has been done with it, does not appear.
A deft over whose property an execution is suspended may sell and deliver it, and if th’ execution is replevied the sale is valid, and will overreach an execution issued on the replevy, or any mortgage given to imdemnify the securities the replevy discharges the lien.
Unless the purchase of the iron by Wilson was made with a fraudulent intent, it is perfectly clear that as sheriff Harrison was not justifiable in taking the iron, and selling it under the execution.
The circumstance of executions being in the hands of the sheriff, could not preclude Thomas from passing the legal right of any property, which he may have then possessed, by sale to another. The executions upon being delivered to the sheriff bound Thomas’ estate, and notwithstanding any transfer thereafter made, the estate of Thomas might, nevertheless, have been taken by the sheriff to satisfy them; but the lien created by the executions was to procure a satisfaction of them, and ought not to be construed to háve an operation further than to overreach the estate during the continuance of the lien in the hands of whomsoever it may come. But as respects the execution which issued in favor of Dugon, as it appears to have *552 been replevied, the lien which it theretofore created, most indisputably became extinct by the execution of the replevin bond: for by replevying the debt, the execution became satisfied, and it would be preposterous to suppose, that a lien created for the purpose of discharging an execution, could continue to exist after the execution itself is satisfied. And as to the other execution which was in the hands of the sheriff at the time of Wilson’s purchase; it is plain, that the lien thereby created can have no effect in the present contest. If that execution has not been paid, and the lien has been continued in a manner which may overreach the purchase by Wilson, it cannot be so translated and attached to the execution of Dugon, under which the iron was sold, as to justify the sheriff in the present contest.
If at the time of such sale, there be 2 x'm forming liens on the property, and one is replevied th’ other not, lien held by the unreplevied execut'n cannot be translated to the replev'd debt—the existence of such cannot be used b'ween others that th' holder of the lien only as an evidence of fraud in the sale.
Surprise on special essentially involved in the issue is no cause for a new trial.
It may have been properly introduced as evidence for the purpose of shewing in connexion with other evidence, that the purchase of Wilson was fraudulent, but it cannot in virtue of any lien which it may have created, authorise, Harrison under the execution of Dugon to take & sell the iron. And with respect to the question of fraud, it formed an enquiry proper for the jury to make upon all the evidence, and we are unable to discover any thing, which will warrant the interference of the court, contrary to their determination
The purchase was made by Wilson, and the iron received in his possession before the mortgage was given by Thomas to his securities, and there is no evidence conducing to prove, that it was intended by the parties to include the iron in the mortgage, and from all the evidence the jury may very rationally have inferred, that no fraud was intended, either by Thomas or Wilson, in their contract about the iron.
It follows, therefore, that the court cannot have erred in refusing to award a new trial, on the ground of the verdict being against law and evidence.
Nor do we perceive any force in the objection taken to the verdict on the ground of surprise. The surprise complained of, is alledged to consist in the evidence of a witness, as to the value of the iron, given during the progress of the trial, but, as Anderson, who seems to have attended to the preparation and management of the cause, states, was introduced in his absence, and after the arguments of counsel had commenced, and which he, moreover, alleges proved the value of the iron to be greater than its intrinsic worth. *553 The defendant must, however, have known that the valve of the iron formed an essential inquiry on the issues joined between the parties, and ought to have been prepared with his evidence on that point, and if he had prepared himself with such evidence, the circumstance of Anderson who managed the cause, having, as he states after the trial commenced, voluntarily withdrawn himself from the courthouse, furnishes no excuse for the failure to introduce it.
Littell, Pope, C. Wickliffe and Hardin for appellant, Crane for appellee.
The judgment must be affirmed with cost and damages.